**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Robinson, | No. CV-21-00608-PHX-DWL (CDB) |
| Plaintiff, | **ORDER** |
| v. | |
| Corizon Health Incorporated, et al., | |
| Defendants. | |

On August 22, 2025, the Court issued an order to show cause "why Plaintiff's claims against Dr. Stewart should not be dismissed for failure to prosecute and why Plaintiff's claims against Corizon are not fully resolved by the bankruptcy plan." (Doc. 105.) That order sets forth the relevant background and is incorporated in this order.

On September 5, 2025, Plaintiff responded to the Court's show-cause order, indicating that "[t]he Chapter 11 Bankruptcy Plan includes several options for Plaintiff to resolve his claims against Corizon and Dr. Stewart" and that Plaintiff is hopeful his claims will be resolved via one of these options. (Doc. 106.) Plaintiff's response also indicates that the bankruptcy court issued a "Channeling Injunction" on March 3, 2025 that, according to Plaintiff, "preserves Plaintiff's rights during the final months of the Bankruptcy Plan, so his claims against Corizon and Dr. Stewart must remain active in order for him to have the ability to pursue recovery from insurance proceeds or through the [personal injury/wrongful death] trust claim process." (*Id.* at 4.)

The response fails to address the points made in the show-cause order (and many

previous orders)—that Corizon's earlier bankruptcy filing did not result in the imposition of an automatic stay as to Plaintiff's claims against Dr. Stewart, that all of the deadlines pertaining to Plaintiff's claims against Dr. Stewart thus expired long ago, and that Judge Bibles ordered that those deadlines would "not be extended" another time. Given that backdrop, the show-cause order provided Plaintiff an opportunity to explain why his claims against Dr. Stewart should not be dismissed for failure to prosecute, but the response does not address the relevant factors bearing on that issue—instead, it simply asserts that the issuance of the Channeling Injunction changes the calculus and precludes (or weighs against) dismissal.

It is unclear to the Court that this interpretation is correct. Even assuming the Channeling Injunction encompasses Plaintiff's claims against Dr. Stewart—a point the response does not establish with clarity—it would at most provide certain "Protections . . . to Released Parties" (*i.e.*, to Corizon and Dr. Stewart), which protections include restraining "all Persons that . . . currently hold or assert . . . any Channeled Claim" (*i.e.*, Plaintiff) from "taking any action for the purpose of directly, indirectly, or derivatively *collecting, recovering, or receiving payment*, satisfaction, or recovery from any Released Party with respect to any such Channeled Claim, other than from the Trusts, including . . . *commencing, conducting, or continuing*, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Release Party, or any property or interest in property of any Released Party." (Doc. at 106-1 at 113, emphases added.) In other words, even assuming the Channeling Injunction applies to Plaintiff's claims against Dr. Stewart in this action, it simply prevents *Plaintiff* from *continuing* his efforts in this action to *collect* from Dr. Stewart. An order by this Court dismissing Plaintiff's claims against Dr. Stewart for failure to prosecute would not violate any of those limitations or protections—if anything, it would advance the purposes of the Channeling Injunction by eliminating a potential source of liability against the Released Parties.

- 2 -

In *O'Donnell v. Vencor Inc.*, 466 F.3d 1104 (9th Cir. 2006), the Ninth Circuit addressed an analogous issue. There, the plaintiff asserted Title VII and ADEA claims against a defendant that later filed for bankruptcy, resulting in the imposition of an automatic stay. *Id.* at 1107-08. While the automatic stay was in place, the court ordered the plaintiff to provide certain status updates, but after the plaintiff failed to timely do so and failed to attend a status conference, the court dismissed the claims for failure to prosecute under Rule 41(b). *Id.* at 1108. Later, after the automatic stay was lifted, the plaintiff unsuccessfully sought to reassert the dismissed claims and then appealed. *Id.* The Ninth Circuit affirmed in relevant part, explaining:

> [W]e *sua sponte* consider whether the magistrate judge's dismissal of O'Donnell's first complaint was void as being entered in violation of the automatic stay. Although the general rule is that actions taken in violation of an automatic stay are void, here the dismissal for failure to prosecute was not void because it did not constitute a "continuation" of a judicial proceeding against the debtor under 11 U.S.C. § 362(a)(1). In dismissing O'Donnell's first complaint under Rule 41(b), the magistrate judge was not required to consider other issues presented by or related to the underlying case. In addition, there was no conceivable way for the court's consideration of the Rule 41(b) dismissal to harm the bankrupt [Vencor]. Furthermore, the dismissal was consistent with the purpose of section 362(a) because it did not intrude on Vencor's "breathing space" or threaten other creditors by giving preference to O'Donnell. Finally, we note that this court in [an earlier case] explicitly adopted the rationale articulated by the Eighth Circuit . . . that the district court has the power to dismiss a case for docket management purposes under Rule 41(b) notwithstanding an automatic stay. Thus, the magistrate judge's dismissal of O'Donnell's first action under Rule 41(b) does not constitute a "continuation" of a judicial proceeding under 11 U.S.C. § 362(a)(1) such that it is void for having violated the automatic stay.

*Id.* at 1108-09 (cleaned up).

Here, in contrast, the automatic stay triggered by the bankruptcy filing never applied to Dr. Stewart. At most, the issuance of the Channeling Injunction in March 2025 began to enjoin Plaintiff from "continuing" to pursue his claims against Dr. Stewart, but Plaintiff's failure to prosecute preceded the issuance of the injunction, rather than occurring during the period in which the injunction was in force. At any rate, even assuming the Channeling Injunction covers Plaintiff's claims against Dr. Stewart, it functionally operates like an automatic stay under § 362(a)(1) in that it prevents Plaintiff from "commencing, conducting, or continuing" his claims in this action against Dr. Stewart. (Doc. at 106-1 at

113.)   Under *O'Donnell*, the entry of an order dismissing those claims for failure to prosecute under Rule 41(b) would not violate any of those prohibitions.

For these reasons, the Court remains inclined to dismiss Plaintiff's claims against Dr. Stewart for failure to prosecute.  "It is within the inherent power of the court to sua sponte dismiss a case for lack of prosecution." *Ash v. Cvetkov*, 739 F.2d 493, 496 (9th Cir. 1984).  The Court considers five factors when determining whether to dismiss a case for failure to prosecute or for failure to comply with court orders: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992).  These factors seem to support dismissal without prejudice under these circumstances, where Plaintiff's non-compliance and failure to prosecute have thwarted the public's interest in expedited resolution of litigation and interfered with the Court's ability to manage its docket.  As forth in detail in earlier orders, Plaintiff failed to prosecute his claims against Dr. Stewart despite being warned many times that he must do so and despite many extensions of deadlines pertaining to Dr. Stewart.  Additionally, Dr. Stewart faces a risk of prejudice from further delay.  These considerations outweigh the public policy favoring disposition of cases on their merits, and a without-prejudice dismissal is the only feasible alternative to a with-prejudice dismissal.

With all of that said, the Court recognizes that the issues raised here are somewhat obscure and that it has perhaps overlooked some relevant detail in the confirmation plan/Channeling Injunction—Plaintiff offered only a cursory discussion of that dense, 129-page attachment in his response.  Thus, the Court will give Plaintiff one final opportunity, in light of the additional concerns and observations raised in this order, to show cause why his claims against Dr. Stewart should not be dismissed for failure to prosecute.[1]

---

[1]    In contrast, the Court is satisfied that the stay should remain in place as to Plaintiff's claims against Corizon, as Plaintiff has adequately demonstrated that his claims against Corizon are not yet "fully resolved by the bankruptcy plan" (Doc. 105 at 7) and it appears that they must remain active within the context of this action to be resolved within the framework of that plan.

1    Accordingly,

2    **IT IS ORDERED** that Plaintiff shall file, by September 29, 2025, a memorandum

3    not to exceed 10 pages showing cause why his claims against Dr. Stewart should not be

4    dismissed for failure to prosecute.

5    Dated this 22nd day of September, 2025.

6

7

8    _____

9    Dominic W. Lanza
     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28